UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASEY DOOLEY,<br><br>  Plaintiff,<br><br>  v.<br><br>JOHN E. WETZEL, Secretary of the Pa. D.O.C., et al.,<br><br>  Defendants. | CIVIL ACTION NO. 3:18-cv-01310<br><br>(MARIANI, J.)<br>(SAPORITO, M.J.) |

## **MEMORANDUM**

This matter comes before the court on a *pro se* Rule 37(a) motion to compel, filed by the incarcerated plaintiff, Casey Dooley. (Doc. 95.) The motion requests an order by the court directing the defendants to produce in discovery a copy of one particular document—an August 9, 2021, psychological evaluation report authored by one of the defendants, Melissa McMahon, a psychological services specialist with the Pennsylvania Department of Corrections ("DOC"). The moving plaintiff further requests that the court sanction the defendants for this alleged discovery violation by awarding him $5,000 in unspecified "reasonable

expenses."[1] The motion is fully briefed and ripe for decision. (Doc. 95; Doc. 96; Doc. 102.)

On June 6, 2002, following a trial, a jury found Dooley guilty but mentally ill on five counts of attempted murder, five counts of aggravated assault, and one count each of reckless endangerment and possession of an instrument of crime. *See Dooley v. SCI Huntingdon Superintendent*, No. 09-5755, 2010 WL 4909604 (E.D. Pa. Nov. 30, 2010) (denying a § 2254 habeas petition), *certificate of appealability denied*, No. 10-4623 (3d Cir. Mar. 16, 2011). On August 15, 2002, the state court sentenced Dooley to serve an aggregate term of 102½ to 205 years in prison. *See id.* Dooley appealed, and on April 7, 2004, the Superior Court of Pennsylvania affirmed his sentence in part and reversed it in part, vacating the five concurrent sentences for aggravated assault but leaving his aggregate

---

[1] We note that the only monetary sanctions authorized by Rule 37(a) are reasonable expenses incurred in making the motion, including attorney fees. *See* Fed. R. Civ. P. 37(a)(5); *Martin v. Brown*, 63 F.3d 1252, 1263 (3d Cir. 1995). But in this case, the moving plaintiff is proceeding *pro se*, and thus he has incurred *no* attorney fees in making this motion. If he were to prevail, he could recover only those expenses *actually incurred* as a discovery sanction. *See Cooper v. Meyer*, No. 16-cv-526-jdp, 2018 WL 1400956, at *3 (W.D. Wis. Mar. 19, 2018); *Juarez v. Delgado*, No. EDCV 13-0275-DDP (AS), 2015 WL 13917157, at *10 (C.D. Cal. Jan. 13, 2015); *Milburn v. City of York*, Civil Action No. 1:12-CV-0121, 2013 WL 3049108, at *3 n.2 (M.D. Pa. June 17, 2013).

sentence of 102½ to 205 years imprisonment undisturbed. *See id.* Dooley sought allocatur in the Supreme Court of Pennsylvania, which was denied on December 29, 2004. *See id.* Dooley sought state and federal post-conviction relief, without success. *See id.*

In his complaint, Dooley seeks to hold several named defendants liable for deprivation of his rights under the Eighth Amendment to be free from cruel and unusual punishment. He alleges that the defendants have been deliberately indifferent to his serious medical needs because they have failed to classify him as a "D Code" inmate, thereby denying him access to unspecified mental health treatment programs. Dooley contends that the jury's finding in June 2002 that he was "guilty but mentally ill" should operate as a *per se* finding that he suffers from a serious mental illness and is entitled to receive unspecified mental health treatment (whatever is provided to "D Code" inmates) while incarcerated. He seeks an award of compensatory and punitive damages against each of the defendants.

The parties have engaged in the exchange of discovery. Dooley served defendant McMahon with a set of twenty interrogatories and a single request for the production of documents, to which McMahon

responded on October 14, 2021. (*See* Doc. 95, at 4–6 (response to request for production); Doc. 102, at 5–14 (response to interrogatories); Doc. 102, at 15–17 (response to request for production).)

In response to the interrogatories, McMahon disclosed that she had personally interviewed or examined Dooley on several occasions between 2006 and 2012. Her last face-to-face encounter with Dooley, however, occurred on January 6, 2012. She disclosed that Dooley was classified as "Stability Code D" for a period—between August 8, 2013, and December 4, 2015—based on a mental diagnosis by a psychiatric provider. She disclosed that his December 2015 reclassification to "Stability Code C" was due to a diagnostic change by a psychiatric provider. McMahon disclosed that, in her role as mental health coordinator at the time, she documented these changes in the DOC computerized records system. When asked whether she had authored any written reports concerning Dooley's mental health or his request for a "D Code," she responded that she had authored a single written report on August 9, 2021, concerning annual psychological evaluation and review of Dooley's eligibility for "Housing Code Z" (single-cell status); she had never authored a report regarding his request for a "D Code," or any other written report. This

- 4 -

single written report she authored was forwarded to Dooley's unit management team for review or further consideration.

Dooley's single request for the production of documents directed to McMahon requested "copies of any and all reports that you authored . . . relating to [Dooley's] mental health and [his] requests for a ['D Code']." McMahon responded with the following objection:

> The Defendant objects to this Request to the extent that it seeks confidential records. The Defendant objects to this request to the extent that it seeks certain information that if obtained, an inmate will be able to use such information to adversely affect institutional safety and security and may also attempt to manipulate and circumvent Department policy, which can affect the overall safety and security of the institutions. Thus, the disclosure of this information would create safety and security concerns and may endanger the lives of involved staff.

(Doc. 95, at 4; Doc. 102, at 15.) The defendant did not raise an objection with respect to relevance or proportionality of this discovery request, nor any other basis for withholding responsive documents from disclosure.

Defense counsel has represented that McMahon authored only a single report responsive to Dooley's request for production—the August 9, 2021, report regarding Dooley's Code Z single-cell status. In a declaration by McMahon, she has stated that she authored only the one

such report, which referenced Dooley's then-current "Stability Code C" classification and whether he met eligibility criteria for "Housing Code Z" (single-cell status). She has acknowledged that this evaluation includes discussion of Dooley's current psychological status, his historical mental health information, classification information, misconduct information, risk factors specific to the inmate, and the thoughts, opinions, and impressions of the authoring mental health professional. She stated that the form itself contains language highlighting its confidential nature and the potential impact on institutional safety and security if disclosed to anyone. She further stated that, at the time of the evaluation, Dooley would have been informed of these confidentiality restrictions and signed an informed consent document acknowledging these confidentiality restrictions.

McMahon's declaration also catalogued several security-related concerns that supported treating the document as confidential and withholding it from disclosure to the inmate-plaintiff: (a) if inmates learn the factors considered by mental health staff when conducting an annual psychological evaluation, such information would be used to manipulate behavior during future psychological reviews to obtain inappropriate

housing or programming; (b) inmates would use the information to retaliate against mental health staff for reporting unfavorable information or making unfavorable recommendations; (c) disclosure of a mental health professional's candid thoughts and opinions regarding the inmate and any risks associated with that inmate would destroy the trust relationship necessary for effective mental health evaluation and treatment; (d) such disclosure would also have a chilling effect on the rapport between mental health professionals and other inmates who learn of that disclosure; (e) such disclosure would discourage mental health staff from providing candid information and opinions; and (f) without reliable psychological information or evaluations, inmates may be given unsafe housing or programming.

In the defendant's brief in opposition, defense counsel has further represented that other defendants in this action have already produced copies of Dooley's mental health contact notes (or "DC-560s") and psychiatric assessments, for a total of more than 650 pages of such materials. The plaintiff has not disputed this representation in his reply brief, which addresses the relevance of the August 2021 report only.

In her brief, the defendant argues that the motion to compel should

be denied because disclosure of the report is neither relevant nor proportional to the needs of the case, and because the disclosure of this confidential information may jeopardize institutional safety and security.

As a threshold matter, we note that the defendant's written response to the request for production included only an objection on confidentiality and institutional safety and security grounds. It did not include a relevance or proportionality objection. But, unlike Rule 33, which provides that any ground for objection to an *interrogatory* is automatically waived if not timely stated in response to the interrogatories, Rule 34 does not contain a similar automatic waiver provision with respect to objections to document requests. *Compare* Fed. R. Civ. P. 33(a)(4) *with* Fed. R. Civ. P. 34(b)(2)(C); *see also Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 239–40 (D.N.J. 2022); *Scaturro v. Warren & Sweat Mfg. Co.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995). Under the circumstances presented, and in the absence of any egregious conduct by the defendant, we decline to find any waiver of the defendant's relevance and proportionality objection.

Rule 26(b) of the Federal Rules of Civil Procedure defines the proper scope of discovery in federal civil actions:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Moreover, under Rule 26(b), "courts have broad authority to impose limits on otherwise relevant discovery when the discovery sought is unreasonably cumulative, or where the burden or expense of discovery outweighs its likely benefit." *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 504 (D.N.J. 2021); *see also* Fed. R. Civ. P. 26(b)(2)(C). "[This] rule of proportionality guards against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Leski, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989) (internal quotation marks omitted); *see also Novo Nordisk*, 530 F. Supp. 3d at 504.

"Relevance is liberally construed[,] especially during discovery." *Novo Nordisk*, 530 F. Supp. at 503; *see also Fort Washington Res., Inc. v.*

*Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994) ("The question of relevancy is to be more loosely construed at the discovery stage than at the trial."). Here, while it is clear from the evidence adduced by the parties that the report does not directly concern Dooley's requests for "Stability Code D" status, it does touch on his mental health status, and it references his stability code status at the time of the report. In the context of discovery, the report would appear to be relevant to the plaintiff's claims, albeit only marginally so.

Notwithstanding this marginal relevance, we conclude that the report should not be disclosed. Under the circumstances described by the parties, this particular report is unreasonably cumulative to evidence already produced by other defendants,. In particular, we note that the primary records of Dooley's mental health treatment and his classification have already been produced to him by other defendants, rendering McMahon's derivative, records-based written evaluation of Dooley's suitability for single-cell, Z-code status cumulative and at most only marginally relevant; McMahon's August 2021 report is necessarily based on a review of records alone, and not any contemporaneous examination of the inmate-plaintiff, as McMahon's last in-person

- 10 -

encounter with Dooley occurred more than nine years earlier, in January 2012. Moreover, based on the merely tangential relationship of this report to Dooley's quest for "Stability Code D" status, the plaintiff's access to several hundred pages of primary source material concerning his classification and mental health treatment produced by other defendants, and the burden this proposed disclosure would impose on institutional safety and security interests relative to the marginal-at-best benefit to the plaintiff's claims, we conclude that the production of McMahon's report is not proportional to the needs of this case.

Having determined that the plaintiff's request for production of McMahon's August 9, 2021, written report is only marginally relevant, is unreasonably cumulative to materials produced by other defendants, and is not proportional to the needs of this case, we need not reach the second ground for withholding the document from disclosure—freestanding confidentiality and institutional safety and security objections. But we note that other courts have upheld the very same objections under similar circumstances. *See, e.g., Reaves v. Wetzel*, Civil Action No. 16-1869, 2017 WL 3621575, at *2 (W.D. Pa. Aug. 23, 2017).

Accordingly, the plaintiff's Rule 37(a) motion to compel (Doc. 95)

will be denied.

That determination, however, leaves us with one last issue to resolve. Rule 37(a)(5) of the Federal Rules of Civil Procedure provides that:

> If the motion is denied, the court . . . *must*, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court *must not* order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B) (emphasis added). Although the non-moving defendant is represented by salaried government attorneys, she nevertheless may recover an award of costs and attorney fees as a discovery sanction under Rule 37(a)(5). *See United States v. Aldeco*, 917 F.2d 689, 690–91 (2d Cir. 1990); *United States Dynamic Visions Inc.*, 307 F.R.D. 299, 302–04 (D.D.C. 2015); *see also Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 159 F. Supp. 3d 5, 9 (D.D.C. 2015). The plaintiff's financial indigency[2] does not exempt him from this

---

[2] Although he has neither moved for nor been granted leave to proceed *in forma pauperis* in this federal removal action, we note that the
*(continued on next page)*

discovery sanction. *See Snyder v. Citisteel USA Inc.*, Civil Action No. 04-970-JJF, 2007 WL 9773663, at \*2 (D. Del. 2007); *Bosworth v. Record Data of Md., Inc.*, 102 F.R.D. 518, 520–21 (D. Md. 1984). Under the circumstances, however, we find that the plaintiff's motion was substantially justified because the plaintiff's position had a reasonable basis in fact and law and, thus, there exists a genuine dispute concerning the defendant's compliance with the discovery rules. *See Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997) (defining "substantial justification") (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see also Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007) (citing *Fitz*); *Rorrer v. Cleveland Steel Container*, 564 Fed. App'x 642, 644 (3d Cir. 2014) (citing *Tracinda* and *Fitz*). Accordingly, we will order each of the parties to bear his or her own costs with respect to this motion.

    An appropriate order follows.

Dated: May 19, 2022             ***s/Joseph F. Saporito, Jr.***
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge

---

plaintiff was granted *in forma pauperis* status in state court proceedings prior to removal.