**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CASEY DOOLEY,** | : | **No. 3:18cv1310** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | **(Magistrate Judge Saporito)** |
| | : | |
| **JOHN E. WETZEL, Secretary of the** | : | |
| **Pa. D.O.C., et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is the report and recommendation ("R&R") of Magistrate Judge Joseph F. Saporito, Jr. in this prisoner civil rights action filed by Plaintiff Casey Dooley pursuant to 42 U.S.C. § 1983 ("Section 1983").  Magistrate Judge Saporito recommends that the court grant defendants' motions to dismiss plaintiff's second amended complaint without providing plaintiff leave to file a third amended complaint.  Plaintiff objects to the R&R as it relates to his Eighth Amendment claims and this matter is now ripe for disposition.

**Background**

This matter involves a dispute over the delivery of mental health treatment services in a state correctional institution.  In 2002, plaintiff was found guilty but mentally ill ("GBMI") of five counts of attempted murder, five counts of aggravated assault, possession of an instrument of a crime, and reckless

endangerment of another person.  Plaintiff asserts in this action that, since a court previously found him GBMI, he should be listed as a D-stability code inmate under a Pennsylvania Department of Corrections' ("DOC") policy and receive the mental health resources that accompany that status.

Plaintiff is currently incarcerated at SCI Huntingdon.  Defendants in this matter include John E. Wetzel, as the Secretary of the DOC, and individuals alleged to be mental health staff members at SCI-Huntington, Jessica Cousins, Richard A. Goss, Timothy Sisto, and Melissa McMahon. [1]  Defendants' refusal to place him on the D-roster, in plaintiff's view, violates his Eighth Amendment rights.

Initially, the district court dismissed plaintiff's action *sua sponte* as frivolous during prescreening of his original complaint.  That decision was vacated by the Third Circuit on appeal and remanded for further proceedings. See Dooley v. Wetzel, 957 F.3d 366 (3d Cir. 2020).  Over the past three years, plaintiff has been granted leave to file two amended complaints after this court determined his previous pleadings failed to state a claim upon which relief can be granted. Dooley v. Wetzel, 2020 WL 5265578, at *8 (M.D. Pa. May 21, 2020), R&R adopted, 2020 WL 5260677 (M.D. Pa. Sept. 3, 2020); Dooley v. Wetzel, 2021

---

[1] Defendant McMahon is identified as "Ms. McMahon" in the second amended complaint.

2

WL 12143102, at *8 (M.D. Pa. Dec. 23, 2021), <u>R&R adopted</u>, No. 3:18-CV-1310, 2022 WL 21757181 (M.D. Pa. Apr. 12, 2022).

Plaintiff filed the operative second amended complaint on July 27, 2022. (Doc. 118).  Defendants then moved to dismiss. (Docs. 119, 121).  The magistrate judge recommends dismissing plaintiff's Eighth Amendment claims without leave to amend. (Doc. 133).  After receiving an extension to respond, plaintiff filed a partial objection to the R&R on April 4, 2023, bringing the case to its present posture. [2]  (Doc. 138).

**Jurisdiction**

As this case is brought pursuant to Section 1983 for constitutional violations, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standards**

**A. Reports and Recommendations**

When a party files objections to an R&R on a dispositive motion, the district court must make a *de novo* determination of those portions of the report to which

---

[2] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

objections are made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir.1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

### B. Motions to Dismiss Under Rule 12(b)(6)

Defendants filed their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]' " and a claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly at 555).

In resolving a motion to dismiss, a district court "may consider *only* the allegations contained in the pleadings to determine its sufficiency." In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016)(emphasis in original).  The Third Circuit, however, declines to interpret this rule narrowly. See id. at 133, n. 7.   "In deciding motions under Rule 12(b)(6), courts may consider documents *integral to or explicitly relied* upon in the complaint, or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," without converting the motion into one for summary judgment.  Id. (citations omitted, quotation marks and brackets removed)(emphasis in original); See also Schuchardt v. President of the United States, 839 F.3d 336, 347, n. 7 (3d Cir. 2016)(citations omitted).

**Analysis**

As noted above, Plaintiff's objection only concerns the portion of the R&R addressing his Eighth Amendment claims for alleged deliberate indifference to his serious medical needs.  Plaintiff generally alleges that defendants violated his constitutional rights by not placing him on the prison's D-roster and affording him the greatest delivery of mental health resources and treatment, which he avers is necessary. (Doc. 118 at 2-6).  Plaintiff further alleges that this placement is

warranted by virtue of a jury's finding in 2002 that he was GBMI[3] of attempted

murder and other charges.  (Id.)

## A. Plaintiff's Eighth Amendment Claims

Deliberate indifference to the serious medical needs of prisoners

constitutes the unnecessary and wanton infliction of pain prohibited by the Eighth

Amendment's bar against cruel and unusual punishments.  See Estelle v.

Gamble, 429 U.S. 97, 104 (1976).  "[T]he Estelle test is two-pronged. 'It requires

deliberate indifference on the part of prison officials and it requires the prisoner's

medical needs to be serious.' " Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d

754, 762 (3d Cir. 1979)(quoting West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)).

"To act with deliberate indifference to serious medical needs[,]" under the

first prong "is to recklessly disregard a substantial risk of serious harm."

---

[3] Under Pennsylvania law, a person who timely offers a defense of insanity may be found GBMI if the trier of fact finds beyond a reasonable doubt, that the person: 1) is guilty of an offense, 2) was mentally ill at the time of the commission of the offense, and 3) was not legally insane at the time of the commission of the offense.  18 PA. CONS. STAT. § 314.  A defendant found to be GBMI "may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." 42 PA. CONS. STAT. § 9727(a).  "Before imposing sentence[,]" however, the trial court "shall hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment" pursuant to Pennsylvania's Mental Health Procedures Act, 50 PA. STAT. § 7101, et. seq.  Moreover, "[a]n offender who is severely mentally disabled and in need of treatment at the time of sentencing shall, consistent with available resources, be provided such treatment as is psychiatrically or psychologically indicated for his mental illness. Treatment may be provided by the Department of Corrections, by the county, or by the Department of Human Services in accordance with the Mental Health Procedures Act. 42 PA. CONS. STAT. § 9727(b).

Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017)(quoting Giles v. Kearney,

571 F.3d 318, 330 (3d Cir. 2009)).  Under the second prong, "[a] medical need is

serious where it 'has been diagnosed by a physician as requiring treatment' or is

'so obvious that a lay person would easily recognize the necessity' of medical

attention." Id. at 227, n.23 (3d Cir. 2017)(quoting Monmouth Cty. Corr.

Institutional Inmates v. Lanzaro, 834 F.2d 326, 347).  "The seriousness of an

inmate's medical need may also be determined by reference to the effect of

denying the particular treatment." Monmouth Cty., 834 F.2d at 347.  The court

will address these elements in reverse order when determining whether the non-

conclusory factual allegations in plaintiff's second amended complaint plausibly

give rise to an entitlement to relief.

### 1. Serious Medical Needs

Per the averments in plaintiff's second amended complaint, [4] he suffers

from schizophrenia, schizoaffective disorder, and major depression, and

experiences painful headaches, insomnia, traumatic nightmares, and occasional

suicidal thoughts. (Doc. 118 at 3-4, 8-11).  The defendants do not appear to

dispute that plaintiff has sufficiently averred his serious mental health needs.

---

[4] The court recognizes that *pro se* filings are liberally construed and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007)(citations omitted).

The court will thus assume for purposes of this decision that plaintiff has done so here.

### 2. Deliberate Indifference

#### a. The Prior Decision on Appeal

Previously, the Third Circuit concluded that plaintiff's original complaint, "laid out a plausibly valid theory for a § 1983 Eighth Amendment claim[,]" when construed liberally. Dooley, 957 F.3d at 374. The court also concluded, however, that the original complaint "as pled, [was] lacking specific facts regarding the officials' actions or inaction to show deliberate indifference, [but] additional detail could satisfy that standard." Id. at 375. The issue here thus is whether plaintiff has pled sufficient facts to state a claim for deliberate indifference now that he has been afforded two opportunities to amend.

Per the allegations in the second amended complaint, plaintiff is being treated for depression with Lexapro. (Doc. 118 at 5). According to plaintiff, the GBMI finding in his case requires that he receive D-roster status according to a prison regulation, DOC Policy 13.8.1, Section 2. (Id. at 2-6). Plaintiff also avers that "he is not being treated at all for his paranoia," which he assumes is a symptom of his diagnosis of schizophrenia and schizoaffective disorder. (Id. at 5). A D-roster classification would afford plaintiff, per his pleading, additional

8

wellness checks and medication during episodes of paranoia "if needed." (Id.) Without this classification, plaintiff avers that he "has suffered, and has been punished at the hands of staff [] at SCI-Huntington due to a systemic failure." (Id. at 4).

Guided by the Third Circuit's earlier-noted deficiencies, the court looks to the second amended complaint to determine whether plaintiff course-corrected and pled specific facts regarding the officials' actions or inaction to show deliberate indifference. Dooley, 957 F.3d at 375.

As for his claim against Defendant Wetzel,[5] plaintiff alleges that he notified this defendant in his role as Secretary for the DOC that plaintiff was not receiving treatment as a GBMI inmate under the policy at SCI-Huntingdon for D-stability

---

[5] In his brief in opposition to the motion to dismiss, plaintiff narrowed his arguments to address only the Eighth Amendment claims advanced in his second amended complaint. (Doc. 129). In their reply brief, several of the named defendants argued that plaintiff abandoned his claims against Defendant John E. Wetzel and claims brought pursuant to the Fourteenth Amendment for alleged violations of procedural and substantive due process. (Doc. 130). Magistrate Judge Saporito's R&R recommends dismissing plaintiff's claims against Defendant Wetzel. He also recommends dismissal of claims brought against all defendants for alleged violation of plaintiff's rights to procedural and substantive due process under the Fourteenth Amendment. (Doc. 133 at 10-15). Plaintiff does not challenge any portion of those recommendations in his objection. (See Doc. 138). A review of the record related to this portion of the R&R does not evidence plain error or manifest injustice and the same will be adopted without further discussion. See FED. R. CIV. P. 72(b), 1983 Advisory Committee Notes; see also 28 U.S.C. § 636(b)(1); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). Finding no clear error or manifest injustice on the face of the R&R, plaintiff's Fourteenth Amendment claims and his claims against Defendant Wetzel will be dismissed. The averments against Defendant Wetzel are included because they later factor into the overall analysis of whether plaintiff has factually stated a plausible claim.

9

code inmates. (Doc. 118 at 6-7). Plaintiff avers that he provided Defendant Wetzel with transcripts of the jury verdict of GBMI and with notes from his 2002 sentencing. (Id. at 7). He alleges that Defendant Wetzel "failed to take any action to correct this problem." (Id.)

As for his claim against Defendant Cousins, plaintiff alleges that she is assigned plaintiff's case as a mental health staff employee and is responsible for the classification and placement of inmates on the mental health roster as leader of the Psychiatric Review Team. (Id. at 7-8). Plaintiff avers that he has had numerous conversations with Defendant Cousins about being found GBMI and concerning his request to be placed on the D-roster. (Id.). Additionally, per plaintiff, he has informed Defendant Cousins of his mental health issues, including paranoia, depression, and occasional suicidal ideations. (Id. at 8). He alleges that Defendant Cousins "still refused to take any action to place [him] on the D-roster pursuant to [DOC] policy[.]" (Id.)

As for plaintiff's claims against Defendants Goss, Sisto, and McMahon, all alleged to be mental health staff employees at SCI-Huntington on the Psychiatric Review Team, he avers that he engaged them in numerous discussions about his mental health and requests for D-roster classification, but nevertheless, these defendants refused to accept that a jury found him GBMI despite being provided

10

his sentencing transcripts. (Id. at 9-11). Likewise, these defendants have failed to adhere to DOC policies by not providing him with D-roster status per plaintiff's allegations. (Id. at 11). He concludes that all defendants "have placed him in harm's way due to [his] occasional suicidal thoughts." (Id. at 8-11).

From the allegations in plaintiff's second amended complaint, plaintiff has now pled facts regarding defendants' actions and inactions. As discussed further below, however, the facts alleged and the exhibits provided by plaintiff ultimately fail to state a claim under section 1983 for violation of plaintiff's Eighth Amendment rights.

### b. Plaintiff's Exhibits, Attachments, and Other Matters of Record

As noted above, the court can consider exhibits attached to a complaint when assessing whether a pleading contains enough facts to state a claim for relief that is plausible on its face. See Watters v. Bd. of Sch. Dir. of City of Scranton, 975 F.3d 406, 412 (3d Cir. 2020). Plaintiff has attached over one-hundred (100) pages of exhibits to his second amended complaint. [6]

---

[6] Plaintiff has appended: 1) the transcript showing the GMBI verdict in his criminal matter, (Doc. 118 at 15-21); 2) the transcript from his sentencing where the trial judge acknowledged that plaintiff needed some psychiatric assistance, (Id. at 22-25); 3) a final appeal decision of Grievance #6971710 noting that plaintiff's concerns over non-placement on the D-roster were reviewed by staff in the psychology office and that his court documents do not identify him as GBMI, (Id. at 26-27); 4) DOC policies related to the delivery of mental health services and the various mental health roster designations , (Id. at 28-71); 5) Defendant Goss's answers to interrogatories, (Id. at 72-81); 6) Defendant McMahon's answers to interrogatories, (Id. at 82-91); 7) Defendant Sisto's answers to interrogatories, (Id. at 92-100); 8) Defendant Wetzel's

In his objection to the R&R, plaintiff also asks that the court consider the exhibits attached to his brief in opposition to the motion to dismiss, which the magistrate judge did not consider. (Doc. 138 at 6-7). "In evaluating a motion to dismiss," the court "may consider documents that are attached to or submitted with the complaint," and "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Although it is generally inappropriate to consider matters outside of the complaint, the court will also consider these exhibits as "integral to the claim" based on plaintiff's request as set forth in his objection to the R&R. These documents ultimately would not change the parties' arguments and it is also presumed plaintiff would have appended them to the second amended complaint as "explicitly relied upon" given the numerous and lengthy exhibits attached in the first instance. [7] Additionally, these documents aid the

---

answers to interrogatories (Doc. 118-1 at 1-7); and 9) Defendant Cousin's answers to interrogatories (Id. at 8-13).

[7] These exhibits include: 1) plaintiff's initial individual recovery plan dated 12/22/2014 (Doc 129-1); 2) court records from Philadelphia County showing the GMBI verdict and the ordering of a pre-sentence psychiatric evaluation (Doc. 129-2); 3) DC-135A inmate requests to Defendants Cousins, McMahon, and Sisto regarding his GMBI verdict and requests for D-roster status (Doc. 129-3); and 4) documents related to Grievance #987087 dating from June 2022 after he was placed in the restrictive housing unit and responses from DOC officials denying the grievance and addressing plaintiff's GMBI verdict and D-roster status. (Doc. 129-4).

court in its determination about whether plaintiff should be granted leave to amend.

### c. Plaintiff's Second Amended Complaint Alleges Disagreement over Treatment

Even after assuming that the non-conclusory factual allegations in plaintiff's pleading are true and construing all exhibits and averments in a light most favorable to him, plaintiff's second amended complaint still falls short of plausibly making a claim under Estelle's first prong, that is deliberate indifference.  He has only alleged a disagreement as to whether his mental health conditions warrant D-roster placement.  As further summarized:

> Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners. See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) . . .
>
> "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted).

Palakovic, 854 F.3d at 227–28.

Plaintiff has not alleged any facts to demonstrate that defendants were deliberately indifferent toward him or recklessly disregarded a substantial risk of

13

serious harm to plaintiff.  Rather, he alleges that he is being treated for depression with an antidepressant. (Doc. 118 at 5).  Plaintiff also alleges that he is being treated by several mental health professionals on staff and that he has had many conversations with them about his mental health and his roster status. (Id. at 7-11).  He has also provided exhibits that establish he has an individual recovery plan. (Doc. 129-1).  Based on these averments and exhibits, plaintiff admits that he has received mental health treatment and medication at SCI-Huntington.  Nonetheless, per plaintiff, he is entitled to D-roster status and additional services, but this status has not been given to him by defendants.  (Id. at 2-6).

Thus, plaintiff has only alleged a disagreement with prison mental health staff over the amount, type, or delivery of services that prison mental health staff have determined are necessary for him.  This is insufficient, standing alone, to state a claim for deliberate indifference. See Monmouth Cty., 834 F.2d at 346 ("mere disagreement as to the proper medical treatment [does not] support a claim of an eighth amendment violation")(citation omitted); Payne v. Kerestes, No. 3:16-CV-372, 2017 WL 1028148, at *7 (M.D. Pa. Mar. 16, 2017)(Mariani, J.)(granting motion to dismiss with leave to amend where D-roster inmate alleged he did not receive "needed" mental health treatment to his dissatisfaction).

14

### d. Plaintiff's Second Amended Complaint Does Not Sufficiently Plead Any Other Recognized Claim for Deliberate Indifference

The Third Circuit has also found "deliberate indifference" in a variety of circumstances, including where a prison official:

1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it;

2) delays necessary medical treatment based on a non-medical reason;

3) prevents a prisoner from receiving needed or recommended medical treatment; or

4) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury.

Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)(quotation marks and citations omitted).

Additionally, in his objection, plaintiff relies on a line of cases setting forth that there are circumstances in which some inmate care is provided by a prison, but that care is insufficient to satisfy constitutional requirements. (See Doc. 138 at 4-5)(collecting cases); see also Palakovic, 854 F.3d at 228; Inmates of Allegheny Cty. Jail, 612 F.2d at 762.

The averments in plaintiff's second amended complaint, however, do not place his claims into any of these categories.  He alleges that he has informed defendants that he suffers from depression and paranoia that have caused him insomnia, headaches, nightmares, trauma, occasional suicidal thoughts, and

other mental health issues. (Doc. 118 at 12).  He assumes that these are "symptoms of his diagnosis of Schizophrenia and Schizophrenic disorder." (Id. at 5).  Further, he states in a conclusory manner that he has "suffered," "been punished," been "left to fend for himself" and been "placed in harm's way" by defendants (Id. at 4, 6, 8-11).   Plaintiff, however, has not averred that he relayed these matters to defendants and then they did not treat his mental health conditions.  Rather, plaintiff avers that he provided this information to defendants along with records showing the GBMI verdict and then defendants did not place him on the D-roster based on that verdict.  Per plaintiff's allegations, the defendants, as mental health providers, did not give the GBMI verdict the weight that plaintiff deems is appropriate.  Similarly, his averments set forth that defendants have not diagnosed defendant with "serious enough" mental health conditions to warrant D-roster placement under their policies to plaintiff's disagreement.

As such, there are no allegations in the second amended complaint plausibly claiming an intentional refusal by defendants to treat plaintiff's mental health despite knowing of his actual needs.  Moreover, plaintiff has not pled that he has been denied mental health treatment based on a non-medical reason or that he has been prevented from receiving mental health treatments that have

been recommended or prescribed for him.  Finally, the averments in the second amended complaint do not set forth that defendants have insisted on a particular treatment plan in the face of plaintiff's resultant pain or risk of permanent injury to plaintiff.  Instead, from the well-pleaded portions of plaintiff's second amended complaint, defendants are addressing plaintiff's mental health needs with an individualized treatment plan reviewed by a team, prescribing him medication for depression, and frequently discussing his mental health status with him regardless of his stability code and housing assignment under DOC designations.

Additionally, even assuming the GBMI verdict to be true, that verdict alone is not sufficient to establish an Eighth Amendment violation in a situation where the DOC does not place a person found GBMI on the D-roster under their later-developed policies.[8]  First, Plaintiff's theory presumes that every person found GBMI will always be found to be "severely mentally disabled and in need of treatment" under Pennsylvania law despite the requirement of a separate hearing and judicial finding. 42 PA. CONS. STAT. § 9727(a).  Plaintiff notably has not

---

[8] See Dooley, 957 F.3d at 372, n. 1 (discussing that the record does not indicate specifically what policies for mental health classification were in place at the time of plaintiff's incarceration in 2002 and that the D-stability code was instituted in 2015 as part of an overhaul of DOC classification system following a Department of Justice investigation).

alleged here that he was found "severely mentally disabled and in need of treatment" by the trial court.[9]  The sentencing transcript appended by plaintiff to his complaint is only a partial transcript and only includes a statement from the trial judge that the judge considered that plaintiff needed "some psychiatric assistance" just prior to imposing the sentence in 2002.  (See Doc. 118 at 25).

Second, the theory behind plaintiff's claims also requires a presumption that GBMI inmates will never recover to a point where their symptoms are less acute while incarcerated and that they will always require more intensive delivery of mental health services.  Pennsylvania law provides that criminal defendants found GBMI and then found to be "severely mentally disabled" shall be provided with "such treatment as is **psychiatrically or psychologically indicated** for [their] mental illness" as is "in accordance with the Mental Health Procedures Act." 42 PA. CONS. STAT.  § 9727(a),(b)(1) (emphasis added).  Thus, Pennsylvania law allows for professional judgments regarding what mental health treatment is necessary for each GBMI inmate in their unique circumstances. DOC policies also reflect that programming for GBMI inmates may change over

---

[9] Likewise, plaintiff has averred no facts indicating that he has availed himself of the process for voluntary treatment provisions afforded to all inmates under the Mental Health Procedures Act.  50 PA. STAT. § 7407(a).

time to less frequent contact with counselors based, in part, on the judgment of facility psychologists. (See Doc. 118 at 57-58).

Moreover, plaintiff's arguments in opposition to the motions to dismiss reflect that that D-roster status would afford him a different, less-restrictive housing assignment. (See Docs. 129, 129-4).   "[I]t is well established that prisoners have no constitutional right to placement in any particular prison, custody classification, or housing assignment[,]" which includes "requesting to 'be placed in D-stability programming[.]' " Ruffin v. Superintendent Retreat SCI, 689 F. App'x 112, 114 (3d Cir. 2017)(per curiam)(non-precedential)(citing Olim v. Wakinekona, 461 U.S. 238, 245 (1983) and Sheehan v. Beyer, 51 F.3d 1170, 1174 (3d Cir. 1995)).

Plaintiff objects to the magistrate judge's application of Ruffin to his matter, arguing that D-roster status is a form of mental health treatment and not a security or custody status. (Doc. 138 at 3).  Ruffin relies upon a Section 1983 due process case, Sheehan, which relies, in turn, on Supreme Court decisions. See 51 F.3d at 1174 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983) and Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process

19

Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

As referenced in footnote 6 above, plaintiff's second amended complaint also raises due process claims, which he chose not to pursue in his opposition to the motions to dismiss or in his objection to the R&R. The above cases, however, can be extended to plaintiff's claims under the circumstances because an inmate's mental health classification plays a significant role in their prison placement, custody classification, and housing assignment. For example, a change in an inmate's stability code from the more acute D-code to the less acute C-code results in inmates no longer being eligible for certain privileges and programs, including out-of-cell time for group meetings with other D-roster inmates. See Talley, 2018 WL 4029597, at *1-*3; Talley, 2023 WL 2415882, at *6; Tierno v. Harry, No. CV 3:21-0151, 2022 WL 852856, at *9 (M.D. Pa. Mar. 22, 2022) (Mannion, J.); Zamichieli v. Merritts, No. CV 3:20-0180, 2022 WL 4585532, at *1 (M.D. Pa. Sept. 29, 2022)(Mannion, J), app. dismissed, No. 22-3206, 2023 WL 8183829 (3d Cir. Jan. 9, 2023). As indicated, the second amended complaint and exhibits attached by plaintiff reflect that he also seeks the housing unit reassignment that comes along with D-roster status. (Doc. 118 at 4, Doc. 129 at 4, Doc. 129-4 (indicating he believes he would not be subject to certain sanctions

20

and would be moved from the restrictive housing unit to the diversionary treatment unit by placement on the D-roster)).  In light of the above, D-roster status is at once a security and custody status and a mental health treatment status.

Additionally, "technical non-compliance" of its own regulations by a prison is not always actionable as a violation of an inmate's civil rights. See Bullard v. Scism, 449 F. App'x 232, 235 (3d Cir. 2011)(non-precedential).  Furthermore, "a prison policy manual does not have the force of law and does not rise to the level of a regulation[,]" and "violation of an internal policy does not automatically rise to the level of a Constitutional violation." Atwell v. Lavan, 557 F. Supp. 2d 532, 556, n. 24 (M.D. Pa. 2008)(Rambo, J.) (citations omitted), aff'd, 366 F. App'x 393 (3d Cir. 2010).

Upon review of plaintiff's allegations de novo based on his objections to the R&R, defendants' alleged failure to categorically apply a classification from a prison policy manual to an inmate with individualized mental health treatment is, in reality, the crux of plaintiff's entire Eighth Amendment claim.  The court is thus persuaded by the above due process cases in this matter where the plaintiff has not otherwise set forth a plausible claim for deliberate indifference by defendants in violation of his Eighth Amendment rights.  Accordingly for these various

21

enumerated reasons, plaintiff's objections to the R&R will be overruled and defendants' motions to dismiss will be granted.

## B. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002). The magistrate judge recommends that plaintiff not be afforded leave to file a third amended complaint because the amendment would be futile.  Based on plaintiff's repeated attempts, it is evident that he can plead no additional facts that would overcome the deficiencies in his second amended complaint under these circumstances.  Additionally, the hundred-plus pages of exhibits that plaintiff has advanced in support of his current pleading do not bolster his allegations.  Rather, they frame this dispute as a disagreement between an inmate and prison mental health staff members about his diagnoses and treatment plan.

While "federal courts must take cognizance of the valid constitutional claims of prison inmates[,]" the "courts are ill equipped to deal with the increasingly urgent problems of prison administration. . ." Turner v. Safley, 482 U.S. 78, 84 (1987)(citation and quotation marks omitted).  "Running a prison . . .

requires expertise, planning, and the commitment of resources. . .[,]" see id. at 85, and this extends to evaluating and classifying an inmate for mental health treatment and placement within the prison system.  Under the factual averments in the second amended complaint, plaintiff's deliberate indifference claim revolves around summarily granting him a certain status under DOC policies without accompanying allegations of the subjective deliberate indifference required to move forward with an Eighth Amendment claim.

Additionally, the court is not "moving the goal posts" as plaintiff argues in his objection to the R&R.  Rather, plaintiff has repeatedly failed to cure deficiencies in his pleadings raised by the Third Circuit, Judge Mariani, and Magistrate Judge Saporito. See Dooley, 957 F.3d at 375; Dooley v. Wetzel, 2020 WL 5265578, at *8 (M.D. Pa. May 21, 2020), R&R adopted, 2020 WL 5260677 (M.D. Pa. Sept. 3, 2020); Dooley v. Wetzel, 2021 WL 12143102, at *8 (M.D. Pa. Dec. 23, 2021), R&R adopted, No. 3:18-CV-1310, 2022 WL 21757181 (M.D. Pa. Apr. 12, 2022).  Further amendment will thus be futile, and the Clerk of Court will be directed to close this case.

**Conclusion**

For the reasons set forth above, the court will overrule plaintiff's objections to the R&R related to his Section 1983 Eighth Amendment claims against

23

defendants. (Doc. 138).  The court will adopt Magistrate Judge Saporito's R&R in its entirety. (Doc. 133).  Defendants' motions to dismiss (Docs. 119, 121) will be granted.  The Clerk of Court will be directed to close this case.

Date: 1/12/24

JUDGE JULIA K. MUNLEY
United States District Court

24