IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASEY DOOLEY,<br>    **Plaintiff** | : | No. 3:18cv1310 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Chief Magistrate Judge Bloom) |
| JESSICA COUSINS,<br>    **Defendant** | : | |

## MEMORANDUM ORDER

Before the court is an appeal of Chief Magistrate Judge Daryl F. Bloom's memorandum and order denying Plaintiff Casey Dooley's fifth motion to appoint counsel in this matter. (Doc. 162). Dooley is incarcerated at SCI-Huntington. He proceeds *pro se* and *in forma pauperis* ("IFP"). (Doc. 131).

Dooley's action presents one remaining claim under 42 U.S.C. § 1983 against Defendant Jessica Cousins alleging violations of his Eighth Amendment rights.[1] Dooley v. Wetzel, No. 24-1230, 2025 WL 1219020, at *4 (3d Cir. Apr. 28,

---

[1] Specifically, Dooley alleges that Cousins was deliberately indifferent to his serious mental health needs by refusing to place him on the D-roster pursuant to a Department of Corrections ("DOC") policy despite being provided evidence to the contrary by the plaintiff. (Doc. 118, Am. Compl. at 7–8, 12–13). According to plaintiff, he specifically provided Cousins with information about his legal status as "Guilty but Mentally Ill" ("GBMI") and informed her about his mental health issues, including paranoia, depression, and occasional suicidal thoughts. (Id. at 8). Dooley alleges that Cousins was a leader on the psychiatric review team ("PRT"), which is responsible for the classification and placements of inmates on the mental health roster. Id.

2025). Dooley requests relief in the form of compensatory and punitive damages. (Doc. 118, Am. Compl. at 13).

During recent proceedings with the Third Circuit Court of Appeals, Dooley raised the issue of having his prior motions to appoint counsel denied by the previously assigned Magistrate Judge.[2] The Third Circuit declined to exercise its discretion to review those prior rulings. See Dooley, 2025 WL 1219020 at *4, n.4; but see Powell v. Symons, 680 F.3d 301, 306 n.3 (3d Cir. 2012) (exercising its discretion to reach the issue of appointment of counsel "in light of [plaintiff's] pro se status and the fact that the Magistrate Judge's orders did not notify [plaintiff] that he risked waiving his appellate rights by failing to object[.]")

Following remand of this matter, the court referred this case to a United States Magistrate Judge on May 20, 2025. (Doc. 151). Dooley subsequently filed a motion to appoint counsel, his fourth, on June 5, 2025. (Doc. 153). Defendant Cousins opposed the motion. (Doc. 153). Chief Magistrate Judge Bloom denied

---

[2] Dooley first moved for the appointment of counsel on June 10, 2020 after prevailing on his first appeal. (Doc. 33). The Honorable Joseph F. Saporito, Jr., then serving as a Magistrate Judge, denied the first motion to appoint counsel on October 6, 2020. (Doc. 38). Dooley filed his second motion to appoint counsel on October 18, 2021, (Doc. 85), which was deferred by Judge Saporito pending the filing of an IFP motion, (Doc. 86). The second motion was denied on December 23, 2021 after Dooley failed to file an IFP motion. (Doc. 98). Dooley filed his third motion for appointment of counsel on November 23, 2021 along with an IFP motion. (Docs. 127–28). On December 29, 2022, Judge Saporito granted the IFP motion, denied the motion to appoint counsel, and issued a report and recommendation ("R&R") recommending that defendants' motions to dismiss be granted. (Docs. 131–33). This matter was reassigned to the undersigned on November 7, 2023. On January 12, 2024, the court overruled Dooley's objection to the R&R and adopted Judge Saporito's recommendations. (Doc. 142–43).

Dooley's fourth motion to appoint counsel on June 24, 2025. (Doc. 154). Dooley did not appeal that ruling to the undersigned.

On September 3, 2025, Dooley filed the instant motion to appoint counsel, his fifth. (Doc. 160). On September 8, 2025, Chief Magistrate Judge Bloom denied plaintiff's motion for appointment of counsel, reasoning primarily that plaintiff has demonstrated a capacity to litigate this case, as evidenced by his favorable results in two prior appeals. (Doc. 161). Dooley filed an "objection" to that order, (Doc. 162), and the court construed the objection as an appeal of a non-dispositive order pursuant to the Rules of Court for the Middle District of Pennsylvania ("Local Rules"). M.D. PA. L.R. 72.3; see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter…where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.")

Upon review, Chief Magistrate Judge Bloom assessed some of the requisite factors under Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993). He did not, however, explicitly reference all six (6) Tabron factors or weigh other considerations in this case.[3] After considering the various guideposts in context,

---

[3] Under the law, Chief Magistrate Judge Bloom did not have to consider all the Tabron factors. See Houser v. Folino, 927 F.3d 693, 699 (3d Cir. 2019) (affirming the denial of a motion to appoint counsel where the court only considered the plaintiff's ability to present his own case and the scarcity of pro bono resources). Nonetheless, the Third Circuit has cautioned that district courts must "explain their reasoning with enough detail to permit appellate review for abuse of discretion." Id. at 700 (citing Tabron 927 F.3d at 158–59). Furthermore, a decision to

3

the court reaches a different result.[4]  Therefore, in its independent discretion, the court will conditionally appoint counsel for Dooley.

Civil litigants have no constitutional or statutory right to appointed counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  However, under 28 U.S.C. § 1915(e)(1), the court has broad discretion to request counsel to represent an indigent civil litigant. Houser v. Folino, 927 F.3d 693, 698 (3d Cir. 2019) (citing Tabron, 6 F.3d at 153).  The court must first determine as a threshold matter whether Dooley's claim has "arguable merit in fact and law." Tabron, 6 F.3d at 155.  That determination has already been made. Dooley, 2025 WL 1219020 at *4.  Consequently, the court must consider the following non-exhaustive factors:

1)  The plaintiff's ability to present his or her own case;
2)  The complexity of the legal issues;
3)  The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
4)  The amount a case is likely to turn on credibility determinations;
5)  Whether the case will require the testimony of expert witnesses; and

---

appoint counsel may be made by a district court sua sponte. Tabron, 6 F.3d at 156.  In this case, the court is not making a determination of legal error, rather, the undersigned concludes that it would be an abuse of discretion not to appoint counsel under these circumstances.

[4] Chief Magistrate Judge Bloom did not have the benefit of Defendant Cousins's motion for summary judgment or the record she would rely on in support of same.

4

   6)  Whether the plaintiff can attain and afford counsel on his own behalf.

Parham, 126 F.at 457–58 (citing Tabron, 6 F.3d at 155-56, 157 n.6); see also Houser, 927 F.3d at 698 (holding that Tabron applies to successive requests for counsel).

 *Ability to present his own case* – As grounds for denying the motions to appoint counsel, Chief Magistrate Judge Bloom considered Dooley's two appeals, which resulted in the Third Circuit reversing, in whole and then in part, two separate determinations by this court as to whether plaintiff stated any viable claims. As noted by Dooley, he was represented by pro bono counsel before the Third Circuit on his first appeal.[5] (Doc. 162). Dooley asserts that he relied on other incarcerated individuals to aid in his second appeal. Id.

 One of the ongoing contentions in this case was whether Dooley should be placed on the D-roster for mental health treatment by the Pennsylvania Department of Corrections ("DOC") rather than the C-roster by virtue of his GBMI status. The facts in Dooley's case have since changed.

 As advanced by Defendant Cousins in her motion for summary judgment:

> 12. Inmates on the "C" Mental Health Roster are actively receiving mental health care, but do not suffer from a serious mental illness.
>
> 13. Inmates on the "D" Mental Health Roster are actively receiving mental health care and are deemed by the DOC to suffer from a serious mental illness, defined as a

---

[5] Specifically, Dooley was represented by attorneys from the Roderick & Solange MacArthur Justice Center and an attorney from O'Melveny & Myers, LLP in Washington D.C.

5

> disorder which causes the inmate to experience significant functional impairment, or who have been convicted as Guilty but Mentally Ill ("GBMI"). ...
>
> 80. On January 31, 2025, Dooley's mental health roster was changed from "C" to "D" under DOC policy based on verification of the nature of his criminal conviction as guilty but mentally ill, or "GBMI" ...

(Doc. 169, Def. Statement of Facts in Support of Summary Judgment) (citations omitted).

Consequently, under DOC policy, Dooley is now treated as if he has a mental illness which causes him to *experience significant functional impairment.* This fact cannot be ignored or minimized due to Dooley's tenacity in pursuing this litigation.

Furthermore, from the record, it seems that Dooley enjoyed pro bono counsel for his first appeal, but at no time before or thereafter. To the extent that Dooley received assistance from other inmates following his first appeal, Defendant Cousins states that she has diagnosed plaintiff with antisocial personality disorder ("ASPD"), "a behavioral disorder characterized by a persistent disregard of the rights of other people, failure to comply with laws and social customs, and irresponsible and reckless behavior." Id. ¶ 14 (citation omitted). Consequently, Dooley's reliance on "jailhouse lawyers" would be a precarious foundation for denying counsel under these circumstances. See e.g. Hamilton v. Leavy, 117 F.3d 742, 749 (3d Cir. 1997) (remanding with instructions

6

to appoint counsel where unrebutted medical evidence suffered from a paranoid delusional disorder). Such assistance is not guaranteed and may be withdrawn at any time, leaving an inmate with mental illness to fend for himself. See Tabron, 6 F.3d at 156; see also Houser, 927 F.3d at 699 ("A litigant's 'ability to file and respond to motions' in particular, we have explained, 'does indicate ... some legal knowledge.'... But 'this fact alone does not conclusively establish' that a litigant is 'able to present his own case.' ") (quoting Parham, 126 F.3d at 459). The court believes this "[p]erhaps...most significant" factor weighs in favor appointing counsel. Montgomery v. Pinchak, 294 F.3d 492, 501 (3d Cir. 2002) (citing Tabron, 6 F.3d at 156).

*Complexity of the issues* – Prior rulings denying Dooley's motions for counsel note that there is only one Eighth Amendment claim against one defendant. Nonetheless, the Third Circuit has reiterated that a civil rights case alleging deliberate indifference to a prisoner's serious medical needs can raise sufficiently complex legal issues to require appointment of counsel. Id. at 502 (citing Parham, 126 F.3d at 459). As it appears to the court, the determination of what treatment is constitutionally required to Dooley involves nuanced legal and factual arguments. Defendant Cousins has recently filed a motion for summary judgment. (Doc. 167). Without counsel, Dooley will have to competently supply evidence on his own that he was "mentally ill enough" to require earlier D-code

7

placement or a different treatment plan from the defendant. This paradox alone weighs in favor of appointment of counsel.

*Factual investigation and credibility* – Incarceration inherently limits a litigant's ability to investigate. This includes taking depositions. Under the circumstances, it does not appear that Dooley will have any ability to take a deposition of the defendant. See id. at 503. Furthermore, in the event this matter goes to trial, Dooley's deliberate indifference claim will turn on credibility determinations—specifically, the word of Defendant Cousins versus the plaintiff's accounts of his symptoms. See Montgomery, 294 F.3d at 499 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991) (discussing the objective and subjective elements that must be demonstrated to establish deliberate indifference to medical needs). Effective cross-examination will be vital to testing credibility. Absent counsel, this will require an inmate, with a GBMI determination and acknowledged mental health conditions, having to cross-examine a prison medical provider specializing in the field of psychiatry. The irrationality of this outcome also weighs in favor of appointment of counsel.[6]

---

[6] Additionally, it seems as that no party now disputes that Dooley was entitled to placement on the D-roster by DOC policy from the time this lawsuit was initiated based on his GBMI status. Dooley has averred that he has been denied the reasons why DOC changed his roster placement after over six years of litigation. (Doc. 158). Taking Dooley at his word, he may never discover the reasons for the change, or the role Defendant Cousins may or may not have played in that change.

8

*Necessity of expert witnesses* – At this juncture, the court cannot rule out that Dooley will require an expert to proceed in this action. See Shifflett v. Korszniak, 934 F.3d 356, 367 (3d Cir. 2019); Montgomery, 294 F.3d at 504; Boring v. Kozakiewicz, 833 F.2d 468, 473–74 (3d Cir. 1987). In the event that Dooley cannot demonstrate the seriousness of his injury through his own testimony, he cannot reasonably be expected to procure, pay for, or effectively depose a medical expert from his prison cell. Counsel "will have a much better opportunity to obtain an expert than would an indigent prisoner." Montgomery, 294 F.3d at 503. Furthermore, an attorney will be in a better position to advise Dooley on this issue. So far, five of the six Tabron factors favor appointing counsel.

*Ability to afford counsel* – The sixth Tabron factor only piles on. Dooley is proceeding *in forma pauperis*. He cannot afford counsel. This factor unquestionably weighs in favor of appointment of counsel.

---

Furthermore, it is abuse of discretion for a court to not consider the possible application of Federal Rule of Civil Procedure 17(c) in such circumstances. See Powell, 680 F.3d at 310. Under Rule 17(c), "[t]he court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action." FED. R. CIV. P. 17(c)(2). The court will conditionally appoint counsel at this time without specifically determining Dooley's competency. Nonetheless, this issue remains unresolved and will be revisited, if necessary, pending further activity in this case. See Mondelli v. Berkeley Heights Nursing & Rehab. Ctr., 1 F.4th 145, 150 (3d Cir. 2021) ("A district court must invoke Rule 17 sua sponte and consider whether to appoint a representative for an incompetent person when there is 'verifiable evidence of incompetence.' ") (quoting Powell, 680 F.3d at 307).

9

*Scarcity of pro bono counsel* – As an additional consideration, "[t]he scarcity of pro bono counsel is important, even if it is not among the delineated Tabron factors." Houser, 927 F.3d at 700. Further, courts are directed to "exercise care in appointing counsel because volunteer lawyer time is a precious commodity." Montgomery, 294 F.3d at 499. Since all the Tabron factors favor the appointment of counsel in this particular case, the court will "make every attempt to obtain counsel." Parham, 126 F.3d at 461. Lawyers who agree to act pro bono represent the legal community at its finest. Freeman v. Lincalis, No. 23-1566, --- F.4th ----, 2025 WL 3020069, at *4, n.27 (3d Cir. Oct. 29, 2025). The court, however, has no authority to compel counsel to represent an indigent civil litigant. Tabron, 6 F.3d at 157, n.7. Thus, Dooley's motion for appointment of counsel will be conditionally granted, subject to the availability of pro bono counsel agreeing to represent the plaintiff.

For the reasons set forth above, it is hereby **ORDERED** as follows:

1) The order denying plaintiff's fifth motion for appointment of counsel, (Doc. 161), is **VACATED** upon reconsideration pursuant to 28 U.S.C. § 636(b)(1)(A).

2) Plaintiff's motion, (Doc. 160), is **GRANTED** on a conditional basis.

3) The Clerk of Court is directed to attempt to locate pro bono counsel to represent plaintiff in this matter pursuant to 28 U.S.C. § 1915(e)(1).

4) Specifically, the Clerk of Court is directed to serve a copy of this order on the Pro Bono Coordinator for The Middle District of Pennsylvania Chapter of the Federal Bar Association—Michael A. O'Donnell, Esq., O'Donnell Law Offices, 267 Wyoming Avenue, Kingston, Pennsylvania, 18704.

5) The Pro Bono Chair shall inform the court no later than **Wednesday, January 22, 2026** whether a volunteer attorney accepts the appointment.

6) Plaintiff is advised that if the court is unable to locate counsel to represent him, he will be required to continue with his case pro se.

7) All deadlines in this case are **STAYED** for ninety (90) days.

Date: 11/26/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

11